E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
MARK AVEIS (Cal. Bar No. 107881)
DAVID H. CHAO (Cal. Bar No. 273953)
SARAH E. SPIELBERGER (Cal. Bar No. 311175)
Assistant United States Attorneys
Major Frauds/General Crimes Sections
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-4477/4586/3358
    Facsimile: (213) 894-6269
    E-mail:   mark.aveis@usdoj.gov
             david.chao@usdoj.gov
             sarah.spielberger@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. SA CR 20-18-JVS-3 |
|---|---|
| Plaintiff, | GOVERNMENT'S MOTION *IN LIMINE* NO. 1: TO ADMIT SUMMARY TESTIMONY AND DOCUMENTARY EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 1006; MEMORANDUM OF POINTS AND AUTHORITIES; EXHIBIT |
| v. | |
| MICHAEL EDWARDS, | |
| Defendant. | Hearing Date: January 29, 2024<br>Hearing Time: 9:00 a.m.<br>Trial Date:   February 6, 2024<br>Trial Time:   8:30 a.m.<br>Location:    Courtroom of the Hon. James V. Selna |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Mark Aveis, David H. Chao, and Sarah E. Spielberger, hereby moves the Court in limine to admit summary testimony and documentary evidence at trial to

prove kickback payments from co-defendant Regina Piehl to defendant Michael Edwards, pursuant to Federal Rule of Evidence 1006.

This motion is based on the attached Memorandum of Points and Authorities and Exhibit A, all files and records in this case, and any further evidence and argument that may be presented at the hearing on this motion.

Dated: January 8, 2024          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division


_____/s/ Mark Aveis_____
MARK AVEIS
DAVID H. CHAO
SARAH SPIELBERGER
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   SUMMARY**

Defendant Michael Edwards ("defendant") is charged, among other charges, with receiving illegal remunerations in connection with federal health care programs, namely, receiving illegal kickbacks. (Dkt. 125 (the "Indictment" or "FSI").)

The government will seek at trial to prove through the summary testimony of a federal agent and summary documentary evidence that co-defendant Regina Piehl ("Piehl") paid illegal kickbacks to defendant in the form of approximately 70 checks totaling approximately $988,000.  The government hereby proffers that the agent will testify that he reviewed hundreds of line items of bank and related records (e.g., showing deposits, account origin and destination, and dates of funds transfers) pertaining to federal health care plan reimbursement payments that flowed to Piehl and that, in turn, Piehl paid to defendant, and that such payments were summarized in documentary form in order to most easily educate the jury about the flow of such funds.  (*See, e.g.,* Exhibit "A.")  The proffered summary testimony and documentary evidence are relevant to establish the elements of the kickback charges and are admissible summary proof under Fed.R.Evid. 1006 because all of the underlying bank and related records have been produced in discovery, are independently admissible in evidence, and are voluminous.

Defense counsel has advised the government that defendant objects to the motion but may stipulate at a later time.  The parties will make their best efforts to notify the Court well in advance of the hearing date should a stipulation be reached.

## II.    FACTS

### A.    Indictment

The Indictment alleges in pertinent part that, between approximately April 2014 and August 2016, defendant and others defrauded federal health care benefit plans (TRICARE and the International Longshore and Warehouse Union Welfare) out of approximately $19.2 million and approximately $2.8 million, respectively, through, in part, prescription reimbursement claims based on illegal kickback arrangements.  (FSI ¶¶ 24, 25(a)-(b), (e), (j).)  One such arrangement was between Piehl and defendant, whereby defendant signed prescriptions that Piehl, in turn, caused to be forwarded to a pharmacy that filled the prescriptions and submitted related claims for reimbursement to the health care plans.  (Id. ¶¶ 2-5, 25(a)(v), (b)(ix), (c)(iii)-(iv).)  The pharmacy then paid a significant portion of the reimbursement proceeds as kickbacks to a third party that passed along a chunk of those kickbacks to Piehl, out of which Piehl then paid kickbacks to defendant.  (Id. ¶¶ 8, 9, 25(a)(v), (b)(ix), (c)(iv).)

Piehl's kickback receipts were convoluted.  She did not receive them directly but instead the kickbacks paid for her benefit were paid to three entities whose bank accounts she solely controlled.  (Id. ¶ 6.)  Piehl further disguised the kickbacks by transferring them to defendant (pursuant to their kickback arrangement) in the form of checks from one or more of iehl's entities to bank accounts for defendant's benefit but in the name of entities controlled by defendant and labeled as "charitable contributions" or as payment for services purportedly rendered.  (Id. ¶¶ 8-9.)

**B.    Government's Summary Testimony and Document Evidence**

The government seeks to call a federal agent as a summary witness to describe the pertinent evidence obtained in the case, namely, hundreds of pages of bank records (including statements, check images, wire transfer documents, and credit and debit items) that include hundreds, if not thousands, of line items for the bank accounts of defendant, his entities, Piehl, and her entities.  In addition to being voluminous, all of the records were produced in discovery and all are independently admissible as supporting by proper foundations (e.g., declarations of custodians of records).

The government further intends to introduce summary documentary evidence in the form of charts and/or spreadsheets based on the underlying bank and related evidence.  The government intends to introduce Exhibit A, attached hereto, or such substantially similar summary exhibit or exhibits on the same factual basis and legal authority set forth herein.[1]

**III. ARGUMENT**

**A.    Federal Rule of Evidence 1006 Permits the Introduction of Summary Testimony and Charts to Summarize Voluminous Records**

As a threshold matter, the elements of the kickback charges include that defendant received "any remuneration, including any kickback or bribe, directly or indirectly, overtly or covertly, in cash or in kind, [from] any person."  42 U.S.C. § 1320a-7b(b)(2)(A)

---

[1]  Exhibit A attached hereto will likely be the government's only summary exhibit to be introduced during its case-in-chief, but the government wishes to advise the Court and defendant's counsel that the government's proof may change as the government streamlines its proof toward and during trial.  The government may introduce additional summary proof in the event of a rebuttal case.

and (2)(B); United States v. St. Junius, 739 F.3d 193, 210, n.18 (5th Cir. 2013).  Thus, the government must prove beyond a reasonable doubt that defendant received remuneration "in cash or in kind."  The payments that the government seeks to introduce via the proffered summary testimony and documentary evidence are relevant to prove this very element.

Federal Rule of Evidence 1006 is especially helpful to prove this element and provides as follows:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place.  And the court may order the proponent to produce them in court.

The Advisory Committee Notes to Rule 1006 add that "[t]he admission of summaries of voluminous books, records, or documents offers the only practicable means of making their contents available to judge and jury.  The rule recognizes this practice, with appropriate safeguards."  Fed. R. Evid. 1006, 1972 Advisory Committee Notes; see also United States v. Johnson, 594 F.2d 1253, 1255 (9th Cir. 1979) ("The purpose of Rule 1006 is to allow the use of summaries when the volume of documents being summarized is so large as to make their use impractical or impossible; summaries may also prove more meaningful to the judge and jury.").

A summary chart may be admitted as substantive evidence when the proponent establishes that the underlying documents upon which the summary is based are voluminous, admissible, and available for inspection.  See Fed. R. Evid 1006; Johnson, 594 F.2d at 1256; United States v. Rizk, 660 F.3d 1125, 1130 (9th Cir. 2011). Although the materials underlying the summary must be admissible,

4

they need not themselves be admitted into evidence.  Rizk, 660 F.3d at 1130-31.  In addition, the summary chart must be accurate, authentic, and properly introduced.  United States v. Scales, 594 F.2d 558, 563 (6th Cir. 1979) (affirming introduction of summary charts presenting an organization of undisputed objective evidence in terms of relevant counts of the indictment).  Any contention that the chart may contain inaccuracies or omissions goes to the weight of the evidence, not its admissibility.  Rizk, 660 F.3d at 1131 n.2.

There is no requirement in Rule 1006 that it be literally impossible to examine the underlying records before a summary or a chart may be utilized.  "All that is required for the rule to apply is that the underlying writings be 'voluminous' and that in-court examination not be convenient."  Scales, 594 F.2d at 562.  Nor does the large size of a summary chart render it inadmissible when it contains otherwise unobjectionable objective evidence.  Id. at 563.

Where a chart does not contain complicated calculations that would require an expert for accuracy, authentication of the chart requires only that the witness (1) have properly catalogued the exhibits and records upon which the chart is based; and (2) have knowledge of the analysis of the records referred to in the chart. Id.  The use of other persons in the preparation of summary evidence goes to the weight of the evidence, not its admissibility.  See United States v. Soulard, 730 F.2d 1292, 1299 (9th Cir. 1984).

Summary charts need not contain the defendant's version of the evidence.  See United States v. Lemire, 720 F.2d 1327, 1349 (D.C. Cir. 1983); Barsky v. United States, 339 F.2d 180, 181 (9th Cir. 1964) (rejecting defendant's argument that summary did not contain his version of the case; accepting that argument "would be to hold

that if a defendant had an alibi, no matter how improbable, then no expert could prepare a summary chart of the evidence tending to prove guilt").

### B. The Proffered Testimony and Summary Documentary Evidence Are Admissible Under Rule 1006

The proffered, proposed summary testimony and proposed summary documentary evidence as well as, if necessary, any additional foundation to be laid during the course of the government's case-in-chief establish that the summary testimony and proposed summary documentary evidence fall squarely within the ambit of Rule 1006.

First, the underlying records are voluminous.

Second, the underlying documents are admissible.  The underlying bank records are admissible as business records of the various banks, and the government has produced to defendants the declarations of the custodians of records for these entities.  See Fed. R. Evid. 803(6).

Third, all of the underlying documents were produced as discovery.

Fourth, the charts are accurate and authentic, and will be properly introduced.  Scales, 594 F.2d at 563.  Defendant will be free to cross-examine the summary witness regarding any claimed inaccuracies that, at most, go to the weight of the summary evidence.

Fifth, the summary witness's testimony, aided by the charts, will aid the jury in understanding the alleged kickback arrangement, particularly given the convoluted flow of funds from the health care plan reimbursements paid to the pharmacy that, in turn, were paid to a third party marketing company that, in turn, paid them to one or

more of Piehl's entity bank accounts, and that, in turn, Piehl paid to one or more of defendant's bank accounts.  Without a summary chart, the jury would be forced to review and analyze the entirety of the voluminous bank records for themselves; the bank statements alone do not adequately summarize the transactions, given that the check items contain additional information that is not readily apparent in the bank statements.  A summary chart uses information drawn from various bank records and reduced the complicated information included in such records to several key pieces of information, presented in an easily comprehensible format.

**IV.   CONCLUSION**

For the foregoing reasons, the government respectfully asks that the Court should admit the proffered summary testimony and related documentary evidence.

EXHIBIT A

# Check Transactions
# May 2014 - August 2016

| Payor/to Payee | Posting Date | Check Number | Check Amount |
|---|---|---|---|
| Global Management Network to Foundation | 5/20/2014 | 992 | $ 3,900.00 |
| Coastal Therapy Group to Foundation | 5/29/2014 | 799 | $ 2,000.00 |
| Century Therapy Group to Foundation | 6/5/2014 | 1015 | $ 2,000.00 |
| Coastal Therapy Group to Foundation | 6/13/2014 | 805 | $ 3,000.00 |
| Global Management Network to Foundation | 6/27/2014 | 2003 | $ 2,000.00 |
| Global Management Network to Foundation | 7/31/2014 | 2011 | $ 2,000.00 |
| Global Management Network to Foundation | 8/29/2014 | 2095 | $ 2,500.00 |
| Century Therapy Group to Foundation | 9/30/2014 | 1038 | $ 3,500.00 |
| Coastal Therapy Group to Foundation | 9/30/2014 | 564 | $ 3,500.00 |
| Global Management Network to Foundation | 10/7/2014 | 2024 | $ 25,000.00 |
| Century Therapy Group to Foundation | 10/14/2014 | 1040 | $ 5,000.00 |
| Coastal Therapy Group to Foundation | 10/14/2014 | 566 | $ 5,000.00 |
| Global Management Network to Foundation | 10/14/2014 | 2119 | $ 15,000.00 |
| Global Management Network to MMR Assoc. | 10/20/2014 | 2120 | $ 5,000.00 |
| Global Management Network to MMR Assoc. | 10/21/2014 | 1154 | $ 15,000.00 |
| Century Therapy Group to MMR Assoc. | 10/31/2014 | 1041 | $ 14,000.00 |
| Costal Therapy Group to MMR Assoc. | 10/31/2014 | 572 | $ 15,000.00 |
| Century Therapy Group to Foundation | 11/6/2014 | 1045 | $ 5,000.00 |
| Coastal Therapy Group to Foundation | 11/6/2014 | 577 | $ 5,000.00 |
| Regina Piehl to Foundaton | 11/10/2014 | 1000 | $ 10,000.00 |
| Worldwide Marketing Group to Foundation | 11/10/2014 | 19805479 | $ 13,000.00 |
| Worldwide Marketing Group to MMR Assoc. | 11/10/2014 | 19805481 | $ 10,000.00 |
| Worldwide Marketing Group to Foundation | 11/12/2014 | 19805478 | $ 13,000.00 |
| Global Management Network to MMR Assoc. | 11/18/2014 | 343 | $ 20,000.00 |
| Coastal Therapy Group to MMR Assoc. | 11/24/2014 | 582 | $ 18,750.00 |
| Global Management Network to MMR Assoc. | 11/24/2014 | 344 | $ 20,000.00 |
| Century Therapy Group to MMR Assoc. | 11/28/2014 | 1049 | $ 29,000.00 |
| Global Management Network to MMR Assoc. | 11/28/2014 | 345 | $ 20,000.00 |
| Coastal Therapy Group to MMR Assoc. | 11/29/2014 | 584 | $ 25,000.00 |
| Century Therapy Group to MMR Assoc. | 12/3/2014 | 1076 | $ 20,000.00 |
| Worldwide Marketing Group to MMR Assoc. | 12/3/2014 | 1095 | $ 20,000.00 |
| Century Therapy Group to MMR Tech | 12/8/2014 | 1078 | $ 20,000.00 |
| Worldwide Marketing Group to MMR Assoc. | 12/8/2014 | 1053 | $ 22,000.00 |
| Century Therapy Group to MMR Assoc. | 12/10/2014 | 1079 | $ 20,000.00 |
| Worldwide Marketing Group to MMR Tech | 12/10/2014 | 1052 | $ 20,000.00 |
| Coastal Therapy Group to Foundation | 12/15/2014 | 601 | $ 10,000.00 |
| Worldwide Marketing Group to Foundation | 12/15/2014 | 1064 | $ 10,000.00 |
| Coastal Therapy Group to MMR Assoc. | 12/18/2014 | 603 | $ 17,000.00 |
| Global Management Network to MMR Assoc. | 12/22/2014 | 360 | $ 20,000.00 |
| Century Therapy Group to MMR Tech | 12/29/2014 | 300309555 | $ 21,000.00 |
| Worldwide Marketing Group to MMR Assoc. | 12/29/2014 | 1009 | $ 20,000.00 |
| Worldwide Marketing Group to MMR Tech | 1/15/2015 | 1023 | $ 6,000.00 |
| Worldwide Marketing Group to MMR Tech | 1/25/2015 | 363 | $ 20,000.00 |
| Worldwide Marketing Group to MMR Assoc. | 1/26/2015 | 1034 | $ 22,500.00 |
| Worldwide Marketing Group to MMR Assoc. | 1/29/2015 | 1037 | $ 24,300.00 |
| Coastal Therapy Group to MMR Assoc. | 2/12/2015 | 632 | $ 13,500.00 |
| Global Management Network to MMR Assoc. | 2/20/2015 | 376 | $ 20,000.00 |
| Worldwide Marketing Group to MMR Tech | 2/20/2015 | 1037 | $ 19,400.00 |
| Worldwide Marketing Group to MMR Assoc. | 2/23/2015 | 1037 | $ 19,400.00 |
| Worldwide Marketing Group to MMR Tech | 3/1/2015 | 1046 | $ 16,000.00 |

Exhibit A

Page 1 of 2

# Check Transactions
# May 2014 - August 2016

| Payor/to Payee | Posting Date | Check Number | Check Amount |
|---|---|---|---|
| Worldwide Marketing Group to MMR Tech | 3/1/2015 | 1042 | $ 9,200.00 |
| Worldwide Marketing Group to MMR Assoc. | 3/9/2015 | 1047 | $ 16,800.00 |
| Global Management Network to MMR Assoc. | 3/10/2015 | 472 | $ 16,000.00 |
| Worldwide Marketing Group to Foundation | 3/13/2015 | 1050 | $ 6,000.00 |
| Global Management Network to MMR Tech | 3/23/2015 | 392 | $ 19,070.00 |
| Worldwide Marketing Group to MMR Tech | 3/23/2015 | 1052 | $ 17,000.00 |
| Regina Piehl to Foundaton | 3/27/2015 | 677 | $ 4,000.00 |
| Global Management Network to MMR Tech | 3/30/2015 | 398 | $ 18,300.00 |
| Worldwide Marketing Group to MMR Tech | 3/30/2015 | 1054 | $ 18,300.00 |
| Global Management Network to MMR Assoc. | 4/5/2015 | 488 | $ 5,100.00 |
| Regina Piehl to Foundaton | 4/7/2015 | 313 | $ 5,000.00 |
| Global Management Network to MMR Tech | 4/19/2015 | 441 | $ 16,400.00 |
| Global Management Network to MMR Tech | 4/23/2015 | 442 | $ 26,200.00 |
| Regina Piehl to Foundaton | 7/31/2015 | 337 | $ 2,000.00 |
| Regina Piehl to Foundaton | 8/13/2015 | 339 | $ 8,000.00 |
| Global Management Network to MMR Assoc. | 9/28/2015 | 425 | $ 11,000.00 |
| Coastal Therapy Group to MMR Assoc. | 10/26/2015 | 911 | $ 12,300.00 |
| Coastal Therapy Group to MMR Assoc. | 10/30/2015 | 921 | $ 10,000.00 |
| Regina Piehl to Foundaton | 6/7/2016 | 364 | $ 2,000.00 |
| Coastal Therapy Group to MMR Tech | 8/16/2016 | 1147 | $ 24,000.00 |
| Epic Tech to MMR Tech | 8/16/2016 | 495 | $ 24,000.00 |
| Coastal Therapy Group to MMR Assoc. | 8/17/2016 | 1147 | $ 24,000.00 |

Exhibit A

Page 2 of 2